SEALED

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

FILED

NOV 0 1 2016

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
             DEPUTY CLERK

2:16 - CV - 2600 KJM EFB

| | |
|---|---|
| United States of America, and the State of California, *ex rel.* TRACEY FREMD 3921 Archwood Road Cameron Park, California 95682 | ) ) ) ) ) ) |
| Plaintiffs, | ) **Case No. _____** ) **FILED UNDER SEAL** ) |
| v. | ) Pursuant to 31 U.S.C. § 3729 ) *et seq.,* the California False Claims ) Act, Cal. Gov't Code §12650 ) *et seq.,* and the Common Law ) of California |
| ADVANCED PAIN DIAGNOSTIC AND SOLUTIONS II, LLC 650 Howe Avenue, Suite 600 Sacramento, CA 95825 | ) ) ) ) ) |
| KAYVAN HADDADAN 650 Howe Avenue, Suite 600 Sacramento, CA 95825 | ) ) ) ) |
| JESSE VAUGHN 650 Howe Avenue, Suite 600 Sacramento, CA 95825 | ) ) ) ) |
| Defendants. | ) **JURY TRIAL DEMANDED** ) ) |

**The Employment Law Group, P.C.**
888 17th Street, NW, Suite 900
Washington, D.C. 20006

FALSE CLAIM ACT *QUI TAM* COMPLAINT UNDER SEAL

CASE NO. _____

**Introduction**

1.     Qui tam relator Tracey Fremd ("Relator"), by and through her attorneys, individually and on behalf of the United States of America and the state of California file this complaint against Advanced Pain Diagnostic and SolutionS II, LLC ("APDSS"), Kayvan Haddadan, and Jesse Vaughn (collectively, "Defendants") to recover damages, penalties, any attorneys' fees for multiple violations of the federal False Claims Act, 31 U.S.C §§ 3729 *et seq.*, the California False Claims Act, Cal. Gov't Code §12650 *et seq*, and Title VII.

2.     This case concerns a brazen scheme perpetrated by APDSS and its owner and provider, Dr. Kayvan Haddadan, and his employee, Jesse Vaughn, to cause the federal government and the state of California to pay hundreds of thousands of dollars of public money based on Defendants' providing services that, because of Vaughn's criminal record, cannot be submitted for reimbursement to the State of California or the federal government.  Compounding this fraud, Defendants routinely bill the federal government and the State of California for services not provided.

3.     Medi-Cal is a jointly funded federal/state program that pays for medical services provided to its beneficiaries by properly enrolled doctors who are eligible to bill under it.

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

- 3 -

4.     Defendants include APDSS, which is a pain management clinic, and Dr. Kayvan Haddadan, who is its owner and provider, as well as Jesse Vaughn, a Nurse Practitioner ("NP"). APDSS provides pain management services to its patients and many of APDSS's patients utilize either Medicare and/or Medi-Cal.

5.     Defendants commit fraud against the state and federal government in three ways:

a.   Firstly, Vaughn is barred from treating and billing for Medi-Cal patients because of a felony DUI conviction. Medi-Cal law mandates that a provider cannot participate in the Medi-Cal program if a provider has been convicted of felony.  CAL. WELF. & INST. § 14043.6 states that Medi-Cal "shall automatically suspend…any individual who…has a license, certificate, or other approval to provide health case, which is revoked or suspended by a federal, California…certification, or approval authority…"  CAL. WELF. & INST. § 14123(a)  states that the director of  Medi-Cal, "shall suspend a provider of service for conviction of any felony or any misdemeanor involving fraud, abuse of the Medi-Cal program or any patient, or otherwise substantially related to the qualifications, functions, or duties of a provider of service."[1] However, Vaughn continues to see

---

[1] CAL. WELF. & INST. § 14123(a)  was amended by 2016 Cal. Legis. Serv. Ch. 852 on September 30, 2016 to revise suspended or revoked workers compensation.

- 4 -

FALSE CLAIM ACT *QUI TAM* COMPLAINT UNDER SEAL

CASE NO. _____

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

and treat patients while Haddadan electronically signs the patient's chart to then bill Medi-Cal for services performed by Vaughn.

b. Secondly, Vaughn and Haddadan are operating services to patients as a "pill mill." Vaughn and Haddadan bill to Current Procedural Technology ("CPT") code 99214 without meeting the billing code requirements or properly evaluating patients' needs.

c. Thirdly, Haddadan conducts repetitive and unnecessary amino assay urine testing on patients to then bill Medicare for reimbursement.

6.     Defendants submitted factually false claims for payment to the federal government and California by shirking the provider requirements for practicing and for billing for tendered services.

7.     Defendants are motivated to commit this fraud to receive more reimbursements, in the form of taxpayer money, from Medicare and Medi-Cal. The more patients Vaughn and Haddadan treat, the more reimbursements both providers can submit and receive from the federal government and California.

## Jurisdiction and Venue

8.     This Court has subject matter jurisdiction over this action under 31 U.S.C. §§ 3730 and 3732.

9.     This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. 3732(a) because Defendants transact business in this judicial district.

FALSE CLAIM ACT *QUI TAM* COMPLAINT UNDER SEAL

CASE NO. _____

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

10.     Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) and under 28 U.S.C. § 1391(c) because APDSS transacts business in the Sacramento Division of this judicial district.

## Parties

**Relator**

11.     Relator resides at 3921 Archwood Road Cameron Park, California 95682.

12.     Relator represents an "original source" of this information within the meaning of 31 U.S.C. § 3730(e)(4)(B),  and state that to their knowledge, the information contained herein is independently derived and has not been publicly disclosed.  Relator voluntarily provided her independent information to the government before filing the instant action.

13.     In or about December 2011, Relator began working for Haddadan part-time as a NP in APDSS's Sacramento location.

14.     In or about July 2015, Relator began working for APDSS three to four days a week.

15.     Relator's responsibilities include treating patients and properly prescribing treatments for their pain ailments.

16.     Relator remains employed at APDSS.

**Defendants**

- 6 -

FALSE CLAIM ACT *QUI TAM* COMPLAINT UNDER SEAL

CASE NO. _____

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

17.   APDSS is a pain management center that treats patients with a variety of services including but not limited to, acupuncture and injections. APDSS also treats addictions.

18.   APDSS has three locations in California: Sacramento, Roseville, and Rocklin.  APDSS is also incorporated in California.

19.   APDSS currently employs three physicians, four NP's, and an administrative staff.

20.   APDSS treats both Medicare and Medi-Cal patients. As discussed more fully below, providers that practice under the Medicare and Medi-Cal programs must abide by federal and state government rules and regulations.

21.   Dr. Kayvan Haddadan is the owner and also a provider at APDSS. He is a Physical Medicine and Rehabilitation Doctor

22.   Haddadan exercises comprehensive control over the company, including its billing practices.

23.   Additionally, Haddadan works at all three APDSS location. He is present at the Sacramento location approximately once per week.

24.   Within the past two years, Haddadan purchased a surgical center and a radiology suite with the goal of expanding APDSS.

25.   In or about June 2012, Jesse Vaughn began working as a NP at APDSS's Sacramento location.

- 7 -

FALSE CLAIM ACT *QUI TAM* COMPLAINT UNDER SEAL

CASE NO. _____

**Barred Participation in Medi-Cal**

26.     Haddadan and Vaughn's interactions create a toxic relationship which affects the rest of the APDSS staff and its patients.

27.     According to Vaughn's LinkedIn profile he markets himself as Doctor of Nursing Practice ("DNP") to patients at APDSS even though he failed to complete the program.

28.     In or about September 23, 2013 Vaughn also had his Respiratory Care Practitioner License revoked.

**BEFORE THE**
**RESPIRATORY CARE BOARD**
**DEPARTMENT OF CONSUMER AFFAIRS**
**STATE OF CALIFORNIA**

| In the Matter of the Accusation Against, | Case No. 1H 2013 031 |
| --- | --- |
| **JESSE FRANKLIN VAUGHN**<br>**1120 Forest Avenue, #146**<br>**Pacific Grove, CA  93950**<br><br>**Respiratory Care Practitioner License No.**<br>**11385**<br><br>Respondent | **DEFAULT DECISION**<br>**AND ORDER**<br><br>[Gov. Code §11520] |

29.     Vaughn allowed his license to lapse, and because of his inaction, the Respiratory Care Board instituted disciplinary proceeding against Vaughn.

30.     Vaughn failed to file a Notice of Defense within the appropriate time and the Board chose to exercise its right under Cal. Gov't Code § 11520 to "take action based upon the respondent's express admissions or upon other evidence and

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

- 8 -

FALSE CLAIM ACT *QUI TAM* COMPLAINT UNDER SEAL

CASE NO. _____

affidavits may be used as evidence without any notice to respondent" and revoked Vaughn's license.

31.     Vaughn's Respiratory Care license was revoked because he had been convicted of a felony, and the Board determined that the crime was "substantially related to the qualifications, functions, or duties of a respiratory care practitioner…"

32.     On or about December 18, 2012, Vaughn was arrested for a felony violation of California Vehicle Code § 23153(a), driving under the influence of alcohol or drugs and causing injury, and § 23153(b), driving under the influence of alcohol with a .08% blood alcohol content or above and also causing injury.[2] Vaughn was also arrested for violation of California Penal Code § 273a(a), abusing or endangering the health of a child.

33.     On or about May 13, 2013, Vaughn was convicted upon his plea of no contest to violating §2153(b) and Penal Code § 273a(b), willfully causing suffering or injury to a child.

34.     According to Medi-Cal law, a provider may be immediately suspended from and prohibited from participating in the Medi-Cal program upon conviction of a felony.  CAL. WELF. & INST. CODE §§ 14043.6 and 14123, "mandate that the Department of Health Care Services (DHCS) suspend a Medi-

_____

[2] As of September 28, 2016 California Vehicle Code § 23153 has been amended by 2016 Cal. Legis. Serv. Ch. 765 (A.B. 2687).

- 9 -

CASE NO. _____

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

Cal provider of health care services (provider) from participation in the Medi-Cal program when the individual or entity has been convicted of a felony...and lost or surrendered a license, certificate, or approval to provide health care…" Dep't. of Health Care Servs, *Suspended and Ineligible Provider List,* MEDI-CAL, https://files.medi-cal.ca.gov/pubsdoco/SandILanding.asp.

35.   Vaughn is no longer eligible to participate in Medi-Cal because he has been convicted of a felony and also possesses a revoked Respiratory Care License.

36.   Vaughn remains on Medi-Cal's ineligible provider list; his suspension is categorized as "indefinitely effective." *Id.*

## Fostering a Hostile Work Environment

39.   Haddadan and Vaughn's relationship fosters a toxic environment which affects the rest of the APDSS staff and its patients.

40.   For instance, Haddadan posted bail for Vaughn after Vaughn was arrested for a domestic charge in or about 2014.

41.   Vaughn takes advantage of his close relationship with Haddadan to undermine Relator.

42.   On or about October 2015, Relator treated a patient who is also a RN. During the appointment, the patient conveyed to Relator that she previously saw Vaughn and was unsatisfied with his treatment and questioned his licenses and certifications.

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

- 10 -

43.     The patient looked up Vaughn's license and found his Respiratory

Care License had been revoked and that he had been convicted of a felony.

44.     On or about January 2016, Relator expressed her concern to the

former practice manager, Rachelle Ciseneros about Vaughn's suspension from

Medi-Cal and his ability to see patients.

45.     On or about February 2016, Vaughn confronted Relator in his office

about her knowledge of his criminal record and her discussing it with other APDSS

staff.

46.     During this conversation, Relator disclosed that she was aware of

Vaughn's past transgressions and his inability to participate in Medi-Cal.

47.     Vaughn became physically aggressive and used his body to block the

doorway to prevent Relator from leaving. The conversation eventually de-escalated

and both agreed to proceed with professional decorum.

48.     Over the next few weeks, Vaughn continued to act aggressively

toward Fremd.

49.     On several occasions, Vaughn shoved patient charts at Relator and

told her that she should see the patient because the patient is hers; Vaughn refused

to see the patient.

50.     In or about May 2016, Haddadan asked to speak with Relator about

her "plans moving forward." Haddadan explained he had concerns about the

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

- 11 -

FALSE CLAIM ACT *QUI TAM* COMPLAINT UNDER SEAL

CASE NO. _____

interactions between Vaughn and Relator. Relator explained that she and Vaughn were cordial.

51.     Haddadan expressed that Relator was causing conflict and that if the conflict did not stop; he "may have to choose between [Relator's] employment or [Vaughn's]."

52.     During the same conversation, Haddadan admitted to Relator that he had knowledge of Vaughn's criminal history and was not concerned about Vaughn participating in and billing Medi-Cal.

53.     On or about May 9, 2016, Vaughn shoved a chart at Relator and insisted that she see a patient.  Vaughn alleged that when Relator previously saw the patient, she did not note the prescriptions she wrote on the patient's chart.

54.     Fremd responded that she had properly documented the patient's chart and asked Vaughn why he demanded that she see the patient. Vaughn began screaming at Relator and Relator felt threatened. Relator conveyed to Jackie Padilla, the practice administrator, that she would contact the police if Vaughn began screaming at her again.

55.     On or about May 12, 2016, D'Antonoli asked Relator to see and treat a patient waiting in one of the exam rooms.

56.     After the patient's exam, Relator asked if the patient would like to discuss anything else. The patient then conveyed to Relator that while he waited

FALSE CLAIM ACT *QUI TAM* COMPLAINT UNDER SEAL

CASE NO. _____

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

for his appointment, he went to the restroom and found it locked. While he waited he heard a man's and woman's voice inside. A few minutes later, Vaughn and the office receptionist exited the bathroom together.

57.     The patient told Relator that he had also spoken to D'Antonoli about what he witnessed. D'Antonoli elevated the incident to Haddadan.

58.     On or about August 12, 2016, Relator, Haddadan, Padilla, and D'Antonoli spoke about the unprofessional work environment, Vaughn's physically aggressive and threatening presence, as well as Vaughn's ability to practice and see patients.

59.     Relator recorded this conversation with Haddadan's consent. During the conversation, Haddadan accused Fremd of creating the toxic work environment and also admitted that he co-signs all of Vaughn's patient charts and prescriptions.

60.     Haddadan also acknowledged Vaughn refilled prescriptions without seeing patients.

61.     On or about October 3, 2016, while he was standing in the hall where patients can hear, Vaughn told medical assistant Maureen Singh that, "She's [Relator] just a [expletive] bitch, she gets everything she wants and I can't stand this." Vaughn was referring to a dispute involving the temperature in the office.

**Suspicious Staffing**

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

- 13 -

FALSE CLAIM ACT *QUI TAM* COMPLAINT UNDER SEAL

CASE NO. _____

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

1   62.   On or about October 2016, Haddadan hired a new neurologist, Dr.
2   Fred Samimi.
3
4   63.   In or about February 2012, the Deputy Assistant Administrator of the
5   California Medical Board issued an Order to Show Cause ("the Show Cause
6   Order") associated with Samimi's ability to prescribe narcotics.  Samimi was
7   denied an application for Drug Enforcement Agency ("DEA") Certificates of
8   Registration with permission to distribute controlled substances II through V
9
10  because his registrations went against public interest.
11
12  64.   Samimi was denied an application because in or about June 2006 he
13  allowed medical assistants at his practice to provide controlled substances to
14  patients without any supervision. Samimi also did not provide instructions on the
15  labels of the prescription bottles.
16
17  65.   The Show Cause Order also alleged that in or about May 2011, the
18  Medical Board of California issued a Stipulated Settlement and Disciplinary Order
19  when Samimi's clinic was audited. The audit uncovered that in or about December
20
21  2009, controlled substances were stored in a metal cabinet that was unlocked and
22  open during the work day.
23
24  66.   The Show Cause Order also alleged that on or about January 2010,
25  Samimi provided controlled substances through post office boxes at his clinic. A
26
27
28                          - 14 -
FALSE CLAIM ACT *QUI TAM* COMPLAINT UNDER SEAL

CASE NO. ____

patient could obtain the drugs if he or she had a key to the post office box located in the "drug room" at Samimi's clinic.

67.     The Order alleged Samimi did not properly document the transport the shipment of controlled substances on a drug log from one clinic location to another. Additionally, the Order asserted that Samimi phoned in prescriptions for patients under another DEA registrant.

68.     Also, in or about April 2003, the California Medical Board issued Samimi a probationary license for failing to disclose a misdemeanor conviction for fraud on his application for licensure.

69.     On or about October 7, 2016, a patient arrived at APDSS to be treated by Samini. Upon arrival, the patient complained of pain behind her left eye. The receptionist offered to call 911 but the patient declined and sat in the waiting room.

70.     After a few moments, the patient collapsed and APDSS staff was called to assist her. The Relator was summoned by a medical assistant to assist the collapsed patient, and both she and another nurse practitioner placed the patient in the prone position before calling 911.

71.     Haddadan and Samimi arrived while Relator and the nurse practitioner were treating the patient. Samimi assessed the patient's nonresponsive eyes, and Haddadan placed the patient's legs on a wheelchair.

- 15 -

FALSE CLAIM ACT *QUI TAM* COMPLAINT UNDER SEAL

CASE NO. _____

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

72.     Relator monitored the patient's vitals and status while Samimi took the patient's pulse. Oxygen was placed over the patient's mouth and nose.

73.     While Relator waited with the patient in APDSS's waiting room for the ambulance to arrive, Haddadan and Samimi left Relator and returned to treating their patients because both physicians were scheduled to see patients back-to-back throughout the day.

74.     Relator was left alone without any assistance from Haddadan, Samimi, or other APDSS staff.

75.     Haddadan and Samimi left the collapsed patient to treat patients they could submit bill Medi-Cal and Medicare for reimbursement.

76.     The patient later died at the hospital due to a massive brain aneurysm.

77.     When Relator confronted Haddadan regarding how the incident was handled he replied, "there was nothing we could have done anyway, she had a brain aneurysm and would've died regardless of what we did for her."

## Suspensions Under Medi-Cal

78.     Medi-Cal law requires strict adherence to its guidelines when a provider has been suspended.

79.     CAL. WELF. & INST. CODE §§ 14043.6 and 14123, "mandate that the Department of Health Care Services (DHCS) suspend a Medi-Cal provider of health care services (provider) from participation in the Medi-Cal program when

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

the individual or entity has been convicted of a felony...and lost or surrendered a license, certificate, or approval to provide health care…" Dep't. of Health Care Servs, *Suspended and Ineligible Provider List,* MEDI-CAL, https://files.medi-cal.ca.gov/pubsdoco/SandILanding.asp.

80.     The statutes also clarify that suspension is immediate when a provider has been convicted of a felony or surrendered a license and a provider is not entitled to a hearing under the California Administrative Procedures Act.

81.     Additionally, § 14043.61 states that a provider of services can be "subject to suspension if claims for payment are submitted under any provider number used by the provider to obtain reimbursement from the Medi-Cal program for services, goods, supplies or merchandise provided, directly or in-directly to a Medi-Cal beneficiary."

## Suspensions under Medicare

82.     CMS also requires strict adherence to its Medicare billing privileges guidelines.

83.     Under 42 C.F.R § 424.535, CMS has the discretion to revoke a provider's privileges if the provider is convicted of a felony.

84.     § 424.535 states, "CMS may revoke a currently enrolled provider or supplier's Medicare billing privileges and any corresponding provider agreement or supplier agreement for the following reasons… convicted (as that term is defined

- 17 -
FALSE CLAIM ACT *QUI TAM* COMPLAINT UNDER SEAL

CASE NO. _____

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

1  in 42 CFR§ 1001.2) of a Federal or State felony offense that CMS determines is

2  detrimental to the best interests of the Medicare program and its beneficiaries."

3

4      85.    According to § 424.516(e), CMS mandates that a provider disclose

5  that he or she has been convicted of a felony within thirty days.

6                          **Prohibited Billing**

7

8      86.    Under the current Medi-Cal regulations, Vaughn is prohibited from

9  billing Medi-Cal. Likewise, Vaughn should have disclosed to CMS his felony

10 within thirty days of his conviction. His failure to do so would make him

11 ineligible to bill CMS for services rendered to Medicare beneficiaries..

12

13     87.    However, Vaughn continues to treat and see Medi-Cal and Medicare

14 beneficiaries at APDSS.

15

16     88.    Haddadan is aware of Vaughn's transgressions and felonies and

17 allows him to treat patients and bill for the services provided.

18     89.    Haddadan signs patient charts on behalf of Vaughn and then bills for

19 Vaughn's services under his or Vaughn's National Provider Identifier ("NPI").

20

21     90.    Vaughn cannot sign the documents associated with the services he

22 provides to Medi-Cal patients because he is banned under Medi-Cal regulations.

23 Vaughn cannot legally submit a claim for reimbursement to Medi-Cal. However,

24 Vaughn continues to treat Medi-Cal and Medicare patients.

25

26

27

28                          - 18 -

FALSE CLAIM ACT *QUI TAM* COMPLAINT UNDER SEAL

CASE NO. _____

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

91.     The below schedule from May 27, 2016, confirms that Vaughn is currently seeing Medi-Cal patients which he is not permitted to treat and for whom he is prohibited to bill.



92.     Because Vaughn cannot sign for submissions, Haddadan, NP Ross Lauger, and former NP Betty Azwell-Raines sign off and send prescriptions for Vaughn's Medi-Cal patients.  Haddadan, Lauger, and Azwell-Raines typically do not see these patients.  They are merely signing off on work that is impermissibly performed by Vaughn.

93.     Typically, Haddadan and well as Lauger, and Azwell-Raines sign off on Vaughn's notes, diagnosis, and prescriptions without ever seeing the patient personally.

Document generated by:  Kayvan D. Haddadan 08/30/2016

729 Sunrise Avenue, Suite 602          650 Howe Ave., Suite 600          2160 Sunset Blvd., Suite 502
      Roseville, CA 95661                      Sacramento, CA 95825                  Rocklin, CA 95747

P: 888-543-2243                    F: 855-864-7246

Electronically signed by Kayvan D. Haddadan MD on 08/30/2016 07:03 PM on behalf of Jesse Vaughn FNP-BC, MSN

- 19 -

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

1

2     94.     Vaughn has been suspended from Medi-Cal since on or about January

3 11, 2014. His suspension is listed as "indefinitely effective" on Medi-Cal's

4 Suspended and Ineligible Provider List.

5

6     95.     Since Vaughn's suspension, however, he has continued to treat, see,

7 and bill for Medi-Cal patients under his name only until on or about June 2016.

8 Haddadan began billing on Vaughn's behalf on or about June 2016.

9

Document generated by: Jesse Vaughn 02/09/2016

10

11  729 Sunrise Avenue, Suite 602    1 Scripps Drive, Suite 102    2160 Sunset Blvd., Suite 502
Roseville, CA 95661    Sacramento, CA 95825    Rocklin, CA 95747

12    P: 888-543-2243    F: 855-864-7246

13    000000003685 07/09/1988 01/18/2016 03:00 PM Page: 3/4

14     96.     Currently, Vaughn treats Medi-Cal and Medicare patients and

15 Haddadan continues to sign on Vaughn's behalf.

16

17     97.     Vaughn is banned from participating in Medi-Cal and Medicare. All

18 claims for reimbursement submitted with his name are fraudulent. Vaughn cannot

19 submit any reimbursements to Medi-Cal and Medicare even with Haddadan

20 signing on his behalf.

21

22        **Prescribing Prescriptions without Seeing Patients**

23     98.     Both Haddadan and Vaughn operate their practice as a "pill mill."

24

25     99.     Haddadan and Vaughn will double and sometimes triple book Medi-

26 Cal patients.

27

28                - 20 -

FALSE CLAIM ACT *QUI TAM* COMPLAINT UNDER SEAL

CASE NO. _____

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

100.   As an example, on June 25, 2015, Vaughn saw twelve patients in less than two hours, seven of whom are Medi-Cal patients and three of whom are Medicare patients. Vaughn was triple booked at 1:15pm and double booked at 1:30pm and 2:15pm.

| Date | Time | | Provider | | Plan |
|---|---|---|---|---|---|
| 06/25/2015 | 1:00 P | | Vaughn, Jesse | 1421 | Molina (Spanish) Healthcare Medi-Cal |
| 06/25/2015 | 1:15 P | | Vaughn, Jesse | 578 | Molina Healthcare Medi-Cal |
| 06/25/2015 | 1:15 P | | Vaughn, Jesse | 578 | Molina Healthcare Medi-Cal |
| 06/25/2015 | 1:15 P | | Vaughn, Jesse | 1924 | Ehs Medical Group |
| 06/25/2015 | 1:30 P | | Vaughn, Jesse | 698 | Molina Healthcare Medi-Cal |
| 06/25/2015 | 1:30 P | | Vaughn, Jesse | 1191 | Medicare |
| 06/25/2015 | 1:45 P | | Vaughn, Jesse | 989 | Molina Healthcare Medi-Cal |
| 06/25/2015 | 2:00 P | | Vaughn, Jesse | 1254 | Medicare |
| 06/25/2015 | 2:15 P | | Vaughn, Jesse | 1518 | Molina Healthcare Medi-Cal |
| 06/25/2015 | 2:15 P | | Vaughn, Jesse | 662 | Medicare |
| 06/25/2015 | 2:30 P | | Vaughn, Jesse | 1989 | River City Medical Group |
| 06/25/2015 | 2:45 P | | Vaughn, Jesse | 1651 | Molina Healthcare Medi- |

101.   Vaughn trained his medical assistants to take down the basic information from the patient and then ask, "do you need to see Jesse today, or do you just need your prescription refilled?"

102.   If the patient replies that they just need their prescription refilled, the medical assistant will tell Vaughn who then signs a prescription refill and never sees the patient.

103.   Vaughn will then copy and paste scanned notes from a previous visit or from another patient's chart. Then Vaughn bills for the visit under code 99214.

- 21 -

FALSE CLAIM ACT *QUI TAM* COMPLAINT UNDER SEAL

CASE NO. _____

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

104.    CPT code 99214 requires the physician to perform a detailed history, detailed examination, and medical decision making of moderate complexity. Vaughn routinely fails to perform any of these required services that would allow him to bill under code 99214.

105.    Below are two different patient charts with two types of assessment. However, the patient plan notes are identical. Vaughn failed to perform the services necessary to justify billing under code 99214, but billed under the code anyway.

**Assessment/Plan**

| # | Detail Type | Description |
|---|---|---|
| 1. | Assessment | Contracture of muscle, unspecified site (M62.40). |
| 2. | Assessment | Intervertebral disc disorders with radiculopathy, thoracic region (M51.14). |
| 3. | Assessment<br>Patient Plan | Other intervertebral disc displacement, lumbar region (M51.26).<br>1) continue to exercise and stretch as tolerated<br>2) f/u with your pcp for any acute or ongoing medical concerns<br>3) continue to take medications as directed<br>4) The patient denies any changes in their pain pattern, they continue to take the medications as prescribed which they find helpful.<br>5) return in one month for medication management for f/u<br>6) reviewed utox screen and cures report today patient is compliant with medication contract.<br><br>Patient education given, continue present medications, encourage daily stretching exercises. The medication was explained understood and accepted by the patient. Potential side effects of medications reviewed and how to avoid them.   F/U in 1 month and immediately if Sx worsen.<br><br>Discussed with patient the importance of taking the medication as prescribed. Will refill |

000000003985 08/27/1974 08/30/2016 04:45 PM Page: 3/5

FALSE CLAIM ACT *QUI TAM* COMPLAINT UNDER SEAL

CASE NO. _____

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

**Assessment/Plan**

| # | Detail Type | Description |
|---|---|---|
| 1. | Assessment | Myalgia (M79.1). |
| 2 | Assessment | Chronic pain syndrome (G89.4). |
| 3. | Assessment Patient Plan | Other intervertebral disc degeneration, lumbar region (M51.36). 1) continue to exercise and stretch as tolerated 2) f/u with your pcp for any acute or ongoing medical concerns 3) continue to take medications as directed 4) The patient denies any changes in their pain pattern, they continue to take the medications as prescribed which they find helpful; 5) return in one month for medication management for f/u 6) reviewed utox screen and cures report today patient is compliant with medication contract. |

Patient education given, continue present medications, encourage daily stretching exercises. The medication was explained understood and accepted by the patient. Potential side effects of medications reviewed and how to avoid them.   F/U in 1 month and immediately if Sx worsen.

Discussed with patient the importance of taking the medication as prescribed. Will refill

000000006156 07/15/1962 08/30/2016 03:00 PM Page: 3/4

106.   Medi-Cal Current Procedural Technology ("CPT") Code 99214 is

billed at a lower rate than 99215. APDSS will receive a higher reimbursement for

submitting to code 99215.

| 99214 | OFFICE/OUTPATIENT VISIT EST | 3.75 | $37.50 |
|---|---|---|---|
| 99214 | OFFICE/OUTPATIENT VISIT EST | 37.50 | $37.50 |
| 99215 | OFFICE/OUTPATIENT VISIT EST | 57.20 | $57.20 |
| 99215 | OFFICE/OUTPATIENT VISIT EST | 5.72 | $57.20 |

107.   Code 99214 is typically billed for a fifteen minute patient

appointment. Relator bills most of her codes to 99214 because most of her

appointments are follow-up appointments.

108.   Code 99215 is usually billed for thirty minute appointments, typically

used for complex, established patients.

FALSE CLAIM ACT *QUI TAM* COMPLAINT UNDER SEAL

CASE NO. _____

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

109.   The services Vaughn supposedly performed are then billed to code 99214 for reimbursement to Medi-Cal or Medicare.

110.   Vaughn should not be billing to either 99214 or 99215, because, in nearly all instances, he fails to meet the requirements that would allow him to bill under either code.

111.   The claims Vaughn submits are fraudulent and prohibited because he is banned from providing services under both Medi-Cal and Medicare. Additionally, Vaughn's claims for reimbursement are fraudulent because he is billing for services that he does not actually complete.

112.   Relator has instructed medical assistants not to follow Vaughn's instructions of asking patients if they only need a prescription filled. Relator has also asked patients whether they actually met with Vaughn or if he just refilled their prescription.

113.   Haddadan also operates his practice as a "pill mill"; he overbooks patients and then submits claims for reimbursement to Medi-Cal and Medicare without meeting the billing requirements.

| | | | | |
|---|---|---|---|---|
| 07/06/2016 | 2:00 P | | Kayvan D Haddadan, Kayvan D | 1313 07/06/16 1:28 P Medicare |
| 07/06/2016 | 2:15 P | | Haddadan, Kayvan D | 573 07/06/16 2:28 P Medicare |
| 07/06/2016 | 2:15 P | | Haddadan, Kayvan D | 317 07/06/16 2:15 P Medicare |

FALSE CLAIM ACT *QUI TAM* COMPLAINT UNDER SEAL

CASE NO. _____

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

| | | | | | |
|---|---|---|---|---|---|
| 07/08/2016 | 1:00 P | | Haddadan, Kayvan D | 1187 | | Molina Healthcare Medi- |
| 07/08/2016 | 1:15 P | | Haddadan, Kayvan D | 962 | 07/08/16 1:06 P | Molina Healthcare Medi- Cal |
| 07/08/2016 | 1:30 P | | Haddadan, Kayvan D | 5934 | 07/08/16 1:16 P | Medicare |
| 07/08/2016 | 1:30 P | | Haddadan, Kayvan D | 1472 | | Molina Healthcare Medi- |

114.   The claims submitted by Haddadan to Medi-Cal and Medicare for reimbursements are fraudulent because like Vaughn, Haddadan copy and pastes patient notes without personalization.

### Urine Tests

115.   Haddadan developed an amino assay lab at the APDSS Roseville location to process urine drug toxicology screenings.

116.   There are two types of urine drug toxicology screenings typically used: Liquid Assay and Liquid Chromatography/Mass Spectrometry LC-MS.

117.   Liquid Assay tests are standard home or in office urine drug screening. Usually, there is a 15% false reading for these tests.

118.   LC-MS testing is the gold standard and happens in a lab.

119.   Haddadan uses the in house amino assay lab as another source of income and attempts to have patients qualify for the amino assay testing.

120.   However, even after performing the amino assay test, APDSS sends the urine tests out to independent labs to perform the LC-MS test at which time Medicare is billed again.

- 25 -

121.   The amino assay test is unnecessary because the test is accomplished just as easily in the cup with liquid assay but the liquid assays are not reimbursed as high.

| 82465 | ASSAY BLD/SERUM CHOLESTEROL | 3.93 | $3.93 |
| 82480 | ASSAY SERUM CHOLINESTERASE | 8.58 | $8.58 |
| 82482 | ASSAY RBC CHOLINESTERASE | 8.36 | $8.36 |
| 82485 | ASSAY CHONDROITIN SULFATE | 22.48 | $22.48 |
| 82486 | GAS/LIQUID CHROMATOGRAPHY | 19.66 | $19.66 |

## Counts
### As to All Defendants

### Count I: False Claims Act Violations
### Pursuant to 31 U.S.C. § 3729(a)(1) for Knowingly Submitting
### False Claims for Payment

122.   The allegations of all paragraphs in this Complaint are incorporated by reference.

123.   In performing the acts described above, Defendants Kayvan Haddadan and Jesse Vaughn, individually and by its and their own acts, or through the acts of its agents, servants, officers, and employees, knowingly presented or caused to be presented, to an officer or employee of the United States Government, false or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1).

124.   31 U.S.C § 3729(a)(1)(A) imposes liability on a person or organization who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval."

FALSE CLAIM ACT *QUI TAM* COMPLAINT UNDER SEAL

CASE NO. _____

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

125.   The Defendants violate 31 U.S.C. § 3729(a)(1) in two ways.

126.   First, allowing Vaughn, who is banned from participating in the state Medi-Cal program and also ineligible to participate in federal Medicare program because he was convicted of a felony, is prohibited to treat and bill for patients. Vaughn circumvents federal regulations and federal billing requirements.   Each time Vaughn (or Haddadan on Vaughn's behalf) bills the federal government to obtain reimbursement for a claim; the Defendants have presented a fraudulent claim for approval and have consequently, have violated the False Claims Act.

a. APDSS, under the direction of Kayvan Haddadan, knowingly disregards the applicable Medicare and Medi-Cal rules and regulations by submitting claims for patients Vaughn treated. Haddadan is aware Vaughn is prohibited from billing Medi-Cal and, possibly, Medicare and signs "Kayvan Haddadan on behalf of Jesse Vaughn" to circumvent the rules and regulations.

b. The claims submitted by Vaughn are material to the government's decision on whether, and how much, to reimburse APDSS for services provided to APDSS patients. Vaughn's failure to disclose his felony and indefinitely banned license are material to both CMS and Medi-Cal allowing him to participate in and bill to the programs. Maintaining an active billing status under Medi-Cal is material to the

FALSE CLAIM ACT *QUI TAM* COMPLAINT UNDER SEAL

CASE NO. _____

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

State of California's decision to reimburse for any claim submitted to Medi-Cal. Additionally, because Vaughn does not possess an active license, his failure to disclose his felony to CMS is material to participation in Medicare; failing to report a felony or a ban from participating in Medi-Cal is material to the federal government's decision to pay for submitted reimbursements.

c. When a claim is submitted for a patient Vaughn treated, Defendants induce the government to pay for claims it would not have paid absent Defendants' fraudulent conduct.

127. Second, each time the Defendants submit to the federal government a claim for payment for a patient visit without meeting the proper billing criteria as required by federal regulations, Defendants are submitting false claims for payment. When a claim is submitted for a patient that did not meet with Haddadan or Vaughn, Defendants induce the government to pay for claims it would not have paid absent Defendants' fraudulent conduct.

a. Vaughn, under the direction of Kayvan Haddadan, knowingly disregards the applicable Medicare and Medi-Cal rules and regulations by submitting claims for patients without spending an adequate amount of time with the patient, and not maintaining updated and accurate client notes for each visit.

- 28 -

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

b.  The claims submitted by Haddadan and Vaughn for patient visits are material to the government's decision on whether, and how much, to reimburse APDSS for services provided to APDSS patients.

c.  When a claim is submitted for a patient both Vaugh and Haddadan did not treat for the appropriate duration of time with patient notes that are not properly accurate or maintained, Defendants induce the government to pay for claims it would not have paid absent Defendants' fraudulent conduct.

128.  As a result of the Defendants' fraudulent conduct, the United States Government has been damaged in amounts to be determined at trial.

### Count II: False Claim Act Violations
### Pursuant to 31 U.S.C. § 3729(a)(1)(B)
### Knowingly Making False Records Material to a False Claim

129.  The allegations of all paragraphs in this Complaint are incorporated by reference.

130.  In performing the acts described above, Defendants Kayvan Haddadan, Jesse Vaughn, and APDSS, individually and by its and their own acts, or though the acts of its agents, servants, officers, and employees, knowingly made, used or caused to be made or used, a false record or statement material to a false or fraudulent claim in violation of 31 U.S.C § 3729(a)(1)(B).

131.   Defendants violate 31 U.S.C § 3729(a)(1)(B) by using stock patient notes from previous visits without personalization or copying and pasting notes, without personalization, from a patient with a different diagnosis that are inaccurate and do not correspond to the treated patient's affliction. Haddadan and Vaughn do not maintain client notes appropriately.

132.   As a result of the Defendant's fraudulent conduct, the United States Government has been damaged in amounts to be determined at trial.

## Count III: California False Claims Act Violations
### Pursuant to Cal. Gov't Code § 12651(a)(1) for Knowingly Submitting False Claims for Payment

133.   The allegations of all paragraphs in this Complaint are incorporated by reference.

134.   In performing the acts described above, Defendants Kayvan Haddadan and Jesse Vaughn, individually and by its and their own acts, or through the acts of its agents, servants, officers, and employees, knowingly presented or caused to be presented, to an officer or employee of the United States Government, false or fraudulent claims for payment or approval in violation of Cal. Gov't Code § 12651(a)(1)

135.   Cal. Gov't Code § 12651(a)(1) imposes liability on a person or organization who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval."

- 30 -

FALSE CLAIM ACT *QUI TAM* COMPLAINT UNDER SEAL

CASE NO. _____

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

136.   The Defendants violate Cal. Gov't Code § 12651(a)(1) in two ways.

137.   First, allowing Vaughn, who is banned from participating in the state Medi-Cal program because he was convicted of a felony, is prohibited to treat and bill for patients. Vaughn circumvents federal regulations and federal billing requirements.  Each time Vaughn (or Haddadan on Vaughn's behalf) bills the federal government to obtain reimbursement for a claim; the Defendants have presented a fraudulent claim for approval and have consequently, have violated the False Claims Act.

a. APDSS, under the direction of Kayvan Haddadan, knowingly disregards the applicable Medi-Cal rules and regulations by submitting claims for patients Vaughn treated. Haddadan is aware Vaughn is prohibited from billing Medi-Cal and signs "Kayvan Haddadan on behalf of Jesse Vaughn" to circumvent the rules and regulations.

b. The claims submitted by Vaughn are material to the government's decision on whether, and how much, to reimburse APDSS for services provided to APDSS patients.  Vaughn's failure to disclose his felony and indefinitely banned license are material to Medi-Cal allowing him to participate in and bill to the programs. Maintaining an active billing

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

- 31 -

CASE NO. _____

status under Medi-Cal is material to the State of California's decision to reimburse for any claim submitted to Medi-Cal.

    c. When a claim is submitted for a patient Vaughn treated, Defendants induce the government to pay for claims it would not have paid absent Defendants' fraudulent conduct.

138.    Second, each time the Defendants submit to the federal government a claim for payment for a patient visit without meeting the proper billing criteria as required by federal regulations, Defendants are submitting false claims for payment.   When a claim is submitted for a patient that did not meet with Haddadan or Vaughn, Defendants induce the government to pay for claims it would not have paid absent Defendants' fraudulent conduct.

    d. Vaughn, under the direction of Kayvan Haddadan, knowingly disregards the applicable Medicare and Medi-Cal rules and regulations by submitting claims for patients without spending an adequate amount of time with the patient, and not maintaining updated and accurate client notes for each visit.

    e. The claims submitted by Haddadan and Vaughn for patient visits are material to the government's decision on whether, and how much, to reimburse APDSS for services provided to APDSS patients.

FALSE CLAIM ACT *QUI TAM* COMPLAINT UNDER SEAL

CASE NO. _____

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

f. When a claim is submitted for a patient both Vaugh and Haddadan did not treat for the appropriate duration of time with patient notes that are not properly accurate or maintained, Defendants' induce the government to pay for claims it would not have paid absent Defendants' fraudulent conduct.

139. As a result of the Defendants' fraudulent conduct, the United States and State of California have been damaged in amounts to be determined at trial.

**Count IV: California False Claim Act Violations**
**Pursuant to Cal. Gov't Code § 12651(a)(2)**
**Knowingly Making False Records Material to a False Claim**

140. The allegations of all paragraphs in this Complaint are incorporated by reference.

141. In performing the acts described above, Defendants Kayvan Haddadan, Jesse Vaughn, and APDSS, individually and by its own acts, or though the acts of its agents, servants, officers, and employees, knowingly made, used or caused to be made or used, a false record or statement material to a false or fraudulent claim in violation of Cal. Gov't Code § 12651(a)(2).

142. Defendants violate Cal. Gov't Code § 12651(a)(2) by using stock patient notes from previous visits without personalization or copying and pasting notes, without personalization, from a patient with a different diagnosis that are

- 33 -

FALSE CLAIM ACT *QUI TAM* COMPLAINT UNDER SEAL

CASE NO. _____

inaccurate and do not correspond to the treated patient's affliction. Haddadan and Vaughn do not maintain client notes appropriately.

143.   As a result of the Defendant's fraudulent conduct, the United States and State of California have been damaged in amounts to be determined at trial.

## Count V: Title VII
### Pursuant to 42 U.S.C. § 2000e, Hostile Work Environment

144.   The allegations of all paragraphs in this Complaint are incorporated by reference.

145.   42 U.S.C. § 2000e-2 states that an employer is prohibited to "limit, segregate, or classify his employees. . .in any way which would deprive or tend to deprive any individual or employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

146.   Relator is a "person" and an "employee," and APDSS is an "employer" as those terms are defined in 42 U.S.C. § 2000e.

147.   Vaughn subjects Relator to unwelcome and unprovoked outbursts of anger and gender-specific discriminatory language because Relator is aware of Vaughn's criminal history, Medi-Cal and Medicare license limitations.

148.   Relator informed Haddadan of Vaughn's behavior to her and Haddadan failed to take action to resolve the issues raised by Relator.

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

- 34 -

149.   Haddadan, and APDSS through Haddadan, failed to take action to resolve the issues raised by Relator, and did not put an end to the abusive work environment in which Relator works.

150.   Haddadan, and APDSS through Haddadan, knew and should have known about Vaughn's harassing behavior towards Relator and failed to take prompt and appropriate corrective action.

151.   Instead, Haddadan, as owner of APDSS, has defended Vaughn's inappropriate behavior and illegal activity in the office.

152.   Haddadan, and APDSS through Haddadan blames Relator for the tenuous work environment and threatens that he will have to choose between Vaughn and Relator's employment if the conflict continues between Vaughn and Relator.

153.   As a result of Defendants' conduct, Relator has suffered emotional distress, compensatory harm and pain and suffering.

## **Prayer for Relief**

WHEREFORE, Relator prays, on behalf of the United States, the state of California, and herself that, on final trial of this case, judgment be entered in favor the United States, the state of California, and Relator and against Defendants as follows:

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

FALSE CLAIM ACT *QUI TAM* COMPLAINT UNDER SEAL

CASE NO. _____

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

1.   In favor of the Relator for the maximum amount pursuant to 31 U.S.C. § 3730(d) to include reasonable expenses, attorneys' fees, and costs incurred by the Relators;

2.   In favor of the United States against Defendants for treble damages to the federal government from the submission of false claims, and the maximum civil penalties for each violation of the False Claims Act;

3.   In favor of the United States and the State of California against Defendants for treble damages to the federal government and the State of California from the submission of false claims, and the maximum civil penalties for each violation of The California False Claims Act;

4.   In favor of Relator for all compensatory and punitive damages, including personal injury damages for pain and suffering, emotional distress, and loss of reputation, back pay, and interest, and attorney's fees and costs to which Relators are entitled under Title VII of the Civil Rights Act; and

5.   Any other such relief that the Court may deem just and equitable.

## Demand for a Jury Trial

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and pursuant to the local rules of this Court, the Relator demands a jury trial as to all issues so triable.


Respectfully submitted,

- 36 -

FALSE CLAIM ACT *QUI TAM* COMPLAINT UNDER SEAL

CASE NO. _____

THE EMPLOYMENT LAW GROUP

By: _____

David L. Scher, Esq.
California Bar No. 184562
R. Scott Oswald, Esq. (*pro hac vice* to be filed)
The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
(202) 261-2802
(202) 261-2835 (facsimile)
dscher@employmentlawgroup.com
soswald@employmentlawgroup.com
Attorneys for *Qui Tam* Plaintiff

- 37 -